IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable R. Brooke Jackson

Civil Action No. 11-cv-01570-RBJ-KMT

AIR METHODS CORPORATION,

     Plaintiff,

v.

OPEIU and
OPEIU LOCAL 109,

     Defendants.

---

## ORDER

---

This matter is before the Court on plaintiff Air Methods Corporation's Motion for

Summary Judgment [#29] and defendants OPEIU and OPEIU Local 109's Motion for Summary

Judgment [#30].  Both motions are fully briefed and ripe for review.

**Facts**[1]

This case arises out of a disputed arbitration award determining whether Air Methods

Corporation's employee Jeff Stackpole was terminated for just cause.  Air Methods Corporation

("Air Methods") is an air transportation business that uses helicopters to transport injured

persons to a medical facility or between medical facilities.  Air Methods' pilots are represented

by the union, OPEIU Local 109.  Jeff Stackpole has been a pilot with Air Methods since

February 2000 and is a member of OPEIU Local 109.  Air Methods and OPEIU are both

---

[1] The following facts are taken from the Abitrator's factual findings and are not in dispute.  [#29-4].

members of a collective bargaining agreement ("CBA") that requires "just cause" for discharges, and allows for discharged parties to challenge the dismissal through the arbitration system.

Air Methods is regulated by the Federal Aviation Administration ("FAA").  As an air carrier Air Methods must be certified by the FAA and must comply with all Federal Aviation Regulations ("FAR").  In order to be in compliance with FAR, Air Methods must develop and implement a general operations manual ("GOM") which contains the policies, procedures, and rules that govern all of the company's flights.  Air Methods' GOM was approved by the FAA, and thereafter the FAA required all Air Methods pilots to comply with the GOM as though it were specifically mandated by the FARs.

The arbitration at issue arose out of OPEIU's challenge of pilot Jeff Stackpole's dismissal.  Air Methods terminated Mr. Stackpole on April 29, 2010 for permitting newly-hired pilot Jeff Metter to fly a helicopter that he was not yet qualified to fly.  Mr. Metter had recently left the military where he flew Black Hawk helicopters, but he had not previously flown the BK-117 helicopter.  At the time of the incident in question, Mr. Metter had undergone eight or nine days of indoctrination training, but he had only trained under a certified flight instructor for two hours and twenty-five minutes.  On April 29, 2010 certified flight instructor Henry Ward was ready to begin Mr. Metter's in-flight training when they received an immediate helicopter dispatch.  Mr. Ward asked Mr. Stackpole to respond to the call because he was available.  Mr. Ward also requested that Mr. Metter ride along on the flight with Mr. Stackpole.

During the course of the flight, Mr. Stackpole allowed Mr. Metter to take the controls of the helicopter.  After transporting the patient to the hospital, Mr. Stackpole gave Mr. Metter permission to take off from the hospital and fly to Air Methods' base in St. Louis.  Mr. Metter also operated the controls during a second portion of the flight and attempted to land the

helicopter at Air Methods' Granite City base.  However, during this last landing Mr. Metter

failed to handle the controls properly and hit the wire strike device with the rotor blades.  All

four rotor blades and the wire strike device were damaged, and the Plexiglass housing on the

helicopter was broken.

By allowing an uncertified pilot to control the helicopter, Mr. Stackpole violated the

GOM.  Section 135 certification is required for all pilots at Air Methods to fly helicopters for

paying customers.  Obtaining Section 135 certification requires a minimum of five hours of

flight training time, although certification typically requires between eight and nine hours.

Certification authorizes the pilot to operate the helicopter on which he was trained with paying

passengers on board.  Although Mr. Metter was experienced in flying other aircraft, he was not

qualified to fly the BK-117 helicopter or any other Air Methods aircraft because he had not

completed the required in-flight training and not been ride checked for Section 135 certification.

Therefore, by allowing Mr. Metter to operate the helicopter when he was not a qualified pilot

Mr. Stackpole violated the GOM provision that states that a PIC:

> will not allow person other than a pilot employed by Air Methods Corp. who is
> qualified in the aircraft or an authorized safety representative of the administrator
> who, is qualified in the aircraft and is checking flight operations, to manipulate
> the controls of an aircraft during flight.

Mr. Stackpole never disputed that he permitted Mr. Metter to operate the helicopter, but

he argued that he was not aware that such an action violated the GOM.  Mr. Stackpole believed

that a non-Section 135 certified pilot was permitted to operate the controls of an aircraft if there

were no paying passengers aboard.

Mr. Stackpole's mistaken belief was based on past practices.  Mr. Stackpole was

originally hired as a pilot by Arch Air Medical, which was eventually acquired by Air Methods.

Under the Arch operating certificate pilots who met different licensing requirements, but who

were not Section 135 certified, were allowed to operate the aircraft on flights with no paying passengers.  The Arch certificate became known as the "Lifenet certificate" and then combined with the current Air Methods certificate in 2007.  As part of the transition from the Lifenet certificate to the Air Methods certificate, all of Air Methods' pilots, including Mr. Stackpole, participated in training to comply with those policies that were different.

The FAA also allows for a Section 91 certification that authorizes a pilot to operate an aircraft with non-paying personnel on board.  However, it is Air Methods' policy under their GOM that all pilots must be Section 135 certified before a pilot is given operational control of the aircraft, whether or not there are paying passengers onboard.  Regardless, Mr. Metter was not Section 91 certified at the time of the flight.  Therefore, despite Mr. Stackpole's mistaken belief that Mr. Metter was authorized to operate the aircraft if there were no paying passengers, Mr. Stackpole's actions were in direct violation of the GOM.

Air Methods determined that Mr. Stackpole's actions were "an egregious violation of Company policies and regulations and cannot be tolerated…[the] actions are considered serious misconduct."  [#29-4].  On that basis Air Methods terminated Mr. Stackpole from employment on May 4, 2010.

In accordance with the collective bargaining agreement, OPEIU appealed Mr. Stackpole's termination.  The parties agreed to arbitrate the dispute, and on February 10 and 11, and March 17 and 18, 2011 an arbitration hearing was held before Arbitrator Mark Berger, Esq. Mr. Berger found that "[t]he Company lacked just cause to terminate the Grievant for his conduct on April 29, 2010."  [#29-4] at 38.  Mr. Berger further ordered that Mr. Stackpole be offered reinstatement to his former position, and that Mr. Stackpole be awarded all net losses incurred from October 29, 2010, six months after his termination.  Air Methods disputes the

Arbitrator's Award and brings the present action requesting that the Court enter judgment vacating Arbitrator Berger's award.

**Standard**

The Court may grant summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The moving party has the burden to show that there is an absence of evidence to support the nonmoving party's case.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  The nonmoving party must "designate specific facts showing that there is a genuine issue for trial."  *Id.* at 324.  A fact is material "if under the substantive law it is essential to the proper disposition of the claim." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  A material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson*, 477 U.S. at 248. The Court will examine the factual record and make reasonable inferences therefrom in the light most favorable to the party opposing summary judgment.  *Concrete Works of Colorado, Inc. v. City and County of Denver*, 36 F.3d 1513, 1517 (10th Cir. 1994).

**Conclusions**

Before the Court are two opposing motions for summary judgment.  Air Methods' motion for summary judgment [#33] and OPEIU's motion for summary judgment [#34] both ask the Court to resolve the same issue: whether Arbitrator Berger's decision to overturn Mr. Stackpole's termination and reinstate him was within his authority and should therefore be upheld.

Air Methods brought this action to vacate the arbitrator's award under the Railway Labor Act, 45 U.S.C. §151("RLA").  The Tenth Circuit has described the district court's standard of

review as "among the narrowest known to the law." *Robinson v. Union Pacific R.R.*, 245 F.3d

1888, 1192 (10th Cir. 2001)(citing *Watts v. Union Pacific R. Co.*, 796 F.2d 1240, 1243 (10th Cir.

1986)).  So long as "the arbitrator's decision concerns constructions of the [CBA], the courts

have no business overruling [the arbitrator] because their interpretation…differs." *Local No. 7*

*United Food & Commercial Workers Int'l Union v. King Soopers, Inc.*, 222 F.3d 1223, 1226

(10th Cir. 2000).  "Nonetheless, an arbitrator is confined to interpretation and application of the

collective bargaining agreement; he does not sit to dispense his own brand of industrial justice,

…his award is legitimate only so long as it draws its essence from the collective bargaining

agreement. *Air Methods Corp. v. OPEIU*, 329 Fed. App'x 204, 205 (10th Cir. 2009) (citing

*Local No. 7*, 222 F.3d at 1227).

In Air Methods' motion for summary judgment [#29] and their response to OPEIU's

Motion [#34] Air Methods argues the following:  (1) The Arbitrator's award fails to draw its

essence from the parties' CBA, and (2) The award violates well-defined and clear public policy.

In response [#35] and in their motion for summary judgment [#30], OPEIU argues that: (1) The

Arbitrator acted within his authority, and (2) The award not only did not violate public policy,

but there is no public policy cause of action under the RLA.

(1) Did Arbitrator Berger act within his authority and grant an award that "draw its

essence" from the parties' CBA?

Air Methods first argues that the Arbitrator ignored and/or altered the language of the

CBA contract, and therefore his award cannot reasonably be said to draw its essence from the

agreement.  In support of this argument, Air Methods alleges that Arbitrator Berger failed to

address Section 9.6 of the CBA which states that a "pilot may be immediately removed from the

payroll or discharged without pay if he violates the FAA Drug/Alcohol policy or commits other

acts of serious misconduct." [#29-2] at 12. Air Methods argues that the failure to consider this provision demonstrates that Arbitrator Berger's award failed to draw its' essence from the CBA. Air Methods further contends that Arbitrator Berger instead substituted and read a "willful and egregious" standard into the agreement, thus improperly relying on documents outside of the pleading.

OPEIU counters that although Section 9.6 was not a materially relevant provision, Arbitrator Berger did consider whether Mr. Stackpole's actions constituted "serious misconduct." OPEIU's argument that Section 9.6 is not materially relevant is supported by Air Methods' own Post-Hearing Brief provided to the arbitrator. Air Methods' only reference to "serious misconduct" occurs on page 54 of a 56 page brief and states the following: "Also, the collective bargaining agreement specifically provides AMC with the right to immediately remove and discharge a pilot for serious misconduct, and Grievant's actions here can only be characterized as serious misconduct." [#35-1] at 54.

Nonetheless, Arbitrator Berger does address the issue of whether Mr. Stackpole's actions constituted as "serious misconduct." Arbitrator Berger recognized that Air Methods considered Mr. Stackpole's actions "serious misconduct." [#29-4] at 21. Arbitrator Berger further states that he must consider the question: "Was [Mr. Stackpole's] resulting violation 'egregious' and did it amount to 'serious misconduct?'" *Id.* In their briefing, Air Methods puts a lot of weight on Arbitrator Berger's failure to address Section 9.6 with the thoroughness that it desires. It is true that the Arbitrator did not thoroughly discuss that provision and only discussed "serious misconduct" in conjunction with other characterizations of Mr. Stackpole's actions. However, the depth of discussion in which Arbitrator Berger engaged is equivalent to the level of import that Air Methods placed on it in its brief to the arbitrator and in its dismissal letter. That

Arbitrator Berger did not focus on the term "serious misconduct" as much as Air Methods would now like, but did nonetheless make findings as to whether Mr. Stackpole's actions constitute serious misconduct, is insufficient evidence that the Arbitrator ignored that language. The Tenth Circuit has made it clear that "in determining whether or not the arbitration award 'draws its essence' from the CBA, a reviewing court looks to the award itself and not at every phrase contained in the arbitrator's opinion." *Chevron Mining Inc. v. United Mine Workers of America*, 648 F.3d 1151, 1155 (10th Cir. 2011) (citing *Kennecott Utah Copper Corp. v. Becker*, 195 F.3d 1201, 1204 (10th Cir. 1999)). Further, "serious misconduct" is not defined in the CBA. Therefore the Court cannot say that Arbitrator Berger's interpretation was incorrect or failed to take its' essence from the Agreement.

Air Methods also argues that Arbitrator Berger improperly read a "willful and egregious" standard into the agreement, and in doing so relied on documents existing outside of the Agreement when he rendered his award. Arbitrator Berger apparently took this language from Air Methods' termination letter, which stated: "Your conscious decisions and the actions that followed were an egregious violation of Company policies and regulations that cannot be tolerated…your actions are considered serious misconduct [under Sections 9.1 and 9.6]." [#29-4]. Air Methods' termination letter further states that Mr. Stackpole's serious misconduct showed a "willful disregard for the GOM, applicable FAR's, [and] the mutually agreed language of the Collective Bargaining Agreement." [#29-5]

OPEI contends that Arbitrator Berger did not replace or read-in any additional language. Instead, Arbitrator Berger looked to the termination letter and Air Methods' stated reasons for dismissal to determine whether or not there was "just cause" for Mr. Stackpole's dismissal. Section 9.1 provides: "Pilots may be subject to disciplinary action, up to and including discharge

for just cause including violation or infraction of company rules or policies, or for violating this Agreement." [#29-2]. OPEIU argues that in order to interpret the "just cause" provision, the Arbitrator must examine the reason for dismissal.

Arbitrator Berger's interpretation of the "just cause" provision required that he look to the reasons stated for Mr. Stackpole's dismissal. Thus, this Court cannot conclude that Arbitrator Berger's use of the words "willful" and "egregious" in his analysis is "contrary to the express language of the contract" or "so unfounded in reason and fact, so unconnected with the working and purpose of the agreement as to manifest an infidelity to the obligation of the arbitrator." *Mistletoe Express Serv. v. Motor Expressmen's Union*, 566 F.2d 692, 694 (10th Cir. 1977). An arbitrator's award will be said to draw from the agreement's essence "as long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority." *United Paperworkers Int'l Union v. Misco*, 484 U.S. 29, 38 (1987). On this basis the Court cannot conclude that Arbitrator Berger was "dispensing his own brand of industrial justice."

Air Methods also argues that Arbitrator Berger unlawfully removed language from the CBA. Arbitrator Berger's Award devoted a lot of discussion to the previous regulations, and Mr. Stackpole's mistaken interpretation of the current regulations. Air Methods contends that the Arbitrator's "reliance" on prior Air Methods' practices effectively writes out Section 37.3 of the CBA. Section 37.3 states that "any past practices established prior to the date of this Agreement shall not create any contractual or legal obligation to continue such practices following the effective date of this Agreement." [#29-2] at 44. It is Air Methods' position that Arbitrator Berger should have analyzed whether Section 37.3 prohibited Mr. Stackpole from using past practices to justify his misconduct.

Arbitrator Berger did not "remove" language from the CBA.  Instead, Arbitrator Berger looked at past practices in order to analyze whether Mr. Stackpole's interpretation of the regulations was credible.  As OPEIU correctly points out, Section 37.3 does not bar any consideration of past practices; it merely states that past practices do not create any legal or contractual obligations.  Arbitrator Berger clearly states in his Award that "no employee, whether a pilot or part of management, may decide for himself or herself what regulations in the GOM mean…the employee cannot rely on his or her personal interpretation to justify his or her actions." [#29-4] at 19.  Further, Arbitrator Berger clearly addresses Section 37.3 by saying "The Company is not bound by past practices to permit trainees who have not yet completed Section 135 requirements to fly Section 91 flight segments." *Id.* at 29.  That Arbitrator Berger followed Section 37.3 and did not impermissibly find that Air Methods was bound by its' past practices is evident in the Arbitrator's ultimate finding that Mr. Stackpole violated Air Methods' regulations.

Air Methods also argues that Arbitrator Berger ignored unambiguous contract language in order to impose his own brand of "industrial justice."  Specifically, Air Methods alleges that Arbitrator Berger ignored CBA provisions providing that:  (1) Air Methods is allowed to terminate Mr. Stackpole for serious misconduct; (2) Mr. Stackpole is required to comply with all Air Methods rules and policies; (3) Mr. Stackpole is required to comply with all applicable FARs; (4) Mr. Stackpole is required to treat flight safety as his paramount concern; (5) past practice are prohibited from imposing any contractual or legal obligations on the parties; and (6) any arbitrator is prohibited from modifying or altering the agreement.

First, Arbitrator Berger does not ignore the provision that permits Air Methods to dismiss for serious conduct.  As discussed above, the Arbitrator did address "serious conduct."  Further, Section 9.6 only states that Air Methods *may* dismiss an employee for serious conduct.  That the

Arbitrator found that Mr. Stackpole's actions were not "serious conduct" does not mean he ignored that provision.  Second, as discussed above, Arbitrator Berger clearly recognized that Mr. Stackpole was required to follow all rules and policies and even found that he failed to follow the GOM.  Third, Arbitrator Berger does not find that Mr. Stackpole violated any FARS, and Air Methods does not cite any applicable FARs that should have been considered.  The fourth provision – treating safety as paramount – is explicitly addressed by Arbitrator Berger. He states that "this is a business which must put safety first, and any misconduct that potentially implicates safety is of great concern."  [#29-4] at 34.  The fifth and sixth provisions have already been discussed and shown to have been addressed by the Arbitrator.

Given that Arbitrator Berger did not ignore relevant provisions in order to reach his decision, the Court cannot conclude that he imposed his own brand of "industrial justice."

Therefore, the Court finds that Arbitrator Berger acted within his own authority and his award drew its essence from the agreement.  As Arbitrator Berger stated in his Award, the "agreed-upon issue in the instant case is the question of whether the Company had just cause to terminate the Grievant." *Id.* at 33.  Arbitrator Berger concluded that "the just cause requirement of the parties' labor agreement includes arbitral authority to review whether there was just cause for the level of punishment imposed." *Id.*  Arbitrator Berger made that determination based on Mr. Stackpole's conduct and the relevant CBA provisions.  The Court concludes that the Award draws its essence from the CBA, and therefore it must be upheld.  *Chevron Mining*, 648 F.3d at 1154.

### (2) Does Arbitrator Berger's Award violate Public Policy?

Air Methods also argues that Mr. Stackpole's reinstatement violates the clear public policy favoring air carrier safety.  According to Air Methods, Mr. Stackpole's reinstatement

violates public policy because it:  (1) Sanctions the violation, eliminates Air Methods' ability to terminate employees in cases of serious misconduct, and it undermines Air Methods' ability to ensure flights operate safely, and (2) Reinstating Mr. Stackpole puts the public's safety at risk.

OPEIU, on the other hand, argues that there is no public policy exception under the RLA, and therefore Air Methods cannot overturn the Arbitrator's Award on that basis.  In support, OPEIU cites *Brotherhood of Maintenance Way Employees v. Denver & Rio Grande Western Railway Company*, 963 F.Supp. 946 (D.Colo. 1997).  In that case, the court found that a district court cannot consider public policy concerns when reviewing an order by the Board under the RLA.  However, as Air Methods points out, the present case does not involve review of the Board but of an individual arbitrator's award.  Air Methods also cites cases from outside the Tenth Circuit in which courts have vacated an arbitrator's decision for violating public policy.

However, the Court need not decide the issue at this juncture.  Even if public policy consideration is permitted for a challenge to an arbitrator's decision under the RLA, this Court finds that public policy concerns do not warrant overturning the Arbitrator's award.  This Court finds that reinstating Mr. Stackpole does not violate public policy.  His reinstatement will not impede Air Methods' ability to fire employees for serious misconduct or sanction Mr. Stackpole's violation.  Nor does it put the public's safety at risk.  The facts of Mr. Stackpole's underlying offense and the Arbitrator's Award do not support those conclusions.

Therefore, this Court finds that Arbitrator Berger's decision to reinstatement Mr. Stackpole after six months of unpaid leave was reasonable and within his authority.  "It was within the arbitrator's discretion to fashion an appropriate remedy given the circumstances." *Chevron Mining*, 648 F.3d at 1156 (citing *United Steelworkers of America v. Enterprise Wheel & Car Corp*, 363 U.S. 593, 597 (1960).

**Order**

Accordingly, Air Methods' Motion for Summary Judgment [#29] is DENIED and the OPEIU's Motion for Summary Judgment [#30] is GRANTED.  The Complaint is dismissed with prejudice.  Defendant as the prevailing party is awarded its costs and may make an appropriate application to the Clerk of this Court.  Although defendant in its motion, brief and response brief requests an award of attorney's fees, it has provided no points or authorities on which an award of attorney's fees may be made.  Accordingly, the request for an award of attorney's fees is denied.

DATED this 28th day of September, 2012.

BY THE COURT:

_____
R. Brooke Jackson
United States District Judge